IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WOLFE TORY MEDICAL, INC.,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br>C.R. BARD, INC.,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS<br><br><br><br><br><br>Case No. 2:07-CV-378 TS |

This case arises from Defendant's alleged misuse of Plaintiff's confidential information, to which Defendant was privy by virtue of an agreement between the Parties.  In its Complaint, Plaintiff alleges three causes of action: (1) breach of contract; (2) trade secret misappropriation; and (3) breach of fiduciary duty.

This matter comes before the Court on Defendant's Motion to Dismiss[1] in which Defendant asks the Court to dismiss Plaintiff's second cause of action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing that it is barred by the economic loss rule.  Having heard oral argument from the Parties, the Court will deny the Motion to Dismiss

---

[1]Docket No. 3.  Defendant also initially sought dismissal of Plaintiff's breach of fiduciary duty claim.  However, Defendant has since withdrawn its motion with respect to this claim.

because Plaintiff's statutory trade secret misappropriation claim is based on an independent legal duty imposed by the Utah Uniform Trade Secrets Act and is, therefore, excepted from application of the economic loss rule.

## I.  STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), "[a]ll well-pleaded factual allegations, as distinguished from conclusory allegations, must be taken as true" and viewed in the light most favorable to the nonmoving party.[2]  Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face."[3]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[4]

## II.  FACTUAL BACKGROUND

In 2004, the Parties began discussing a possible agreement concerning Plaintiff's intra-abdominal pressure monitoring products (the "Products"), including a possible acquisition of Plaintiff by Defendant.  On September 8, 2004, the Parties entered into a Confidential Information Agreement (the "Agreement") that allowed Defendant access to Plaintiff's confidential information "in order to allow [Defendant] to assess its interest in entering into a definitive Agreement with [Plaintiff] relative to the Products."[5]  The Agreement requires

---

[2]*Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) (quoting *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984)).

[3]*Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1974 (2007) (dismissing complaint where the plaintiffs "have not nudged their claims across the line from conceivable to plausible").

[4]*Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[5]Docket No. 1, at Ex. A.

Defendant to refrain from using Plaintiff's confidential information for its own benefit or the benefit of any third party for a period of three years.

Pursuant to the Agreement, Plaintiff provided Defendant with confidential information concerning the Products, related markets and marketing, "and other valuable confidential information."[6] However, the Parties did not enter into any further agreement.

Plaintiff further alleges that in March of 2007 Defendant announced its own intra-abdominal pressure monitoring device and that Defendant used Plaintiff's confidential information (1) "to design around [Plaintiff's] [P]roducts prior to being patented," (2) to determine "whether to enter the intra-abdominal pressure monitoring market," and (3) "to develop and utilize an effective marketing strategy."[7] According to Plaintiff, Defendant "was in the process of developing its own intra-abdominal pressure monitoring device" when it entered into the Agreement and failed to disclose this fact to Plaintiff.[8] Plaintiff alleges that these actions constitute breach of the Agreement and trade secret misappropriation.

III.  DISCUSSION

In its Motion to Dismiss, Defendant asks the Court to dismiss Plaintiff's cause of action for trade secret misappropriation for failure to state a claim, arguing that the claim is barred by the economic loss rule.

---

[6]Docket No. 1, at ¶ 9.

[7]*Id.* at ¶¶ 16-17.

[8]*Id.* at ¶ 9.

*A.  Conflict of Laws*

As a preliminary matter in this diversity case, the Court must determine which state's law applies to the question before it.  The Agreement contains a choice of law provision, which specifies that it "shall be governed and construed in all respects in accordance with the internal laws of the State of Georgia."[9]  However, both Parties agree that this narrowly drawn choice of law provision does not extend to Plaintiff's tort claims, or the defenses thereto, and that the appropriate body of law to apply to these claims should be determined under Utah's "most significant relationship" approach to conflict of laws issues.  Applying this test, the Parties also agree that Utah law should govern Plaintiff's trade secret misappropriation claim and the question of whether that claim is barred by the economic loss rule.[10]  Having carefully considered this issue, the Court agrees with the Parties and will, therefore, apply Utah law.

*B.  Economic Loss Rule*

Defendant argues that the economic loss rule bars Plaintiff's trade secret misappropriation claim because any duty of Defendant respecting Plaintiff's alleged trade secrets arose pursuant to the Agreement.  To the contrary, Plaintiff asserts that "[s]tatutory claims create duties independent of contractual obligations,"[11] and that its statutory trade secret claim is, therefore, not barred by the economic loss rule.

---

[9]Docket No. 1, at Ex. A ¶ 6.

[10]Accordingly, although Plaintiff initially pleaded its trade secret misappropriation claim under the Georgia Trade Secrets Act of 1990, it now seeks to amend the Complaint to assert this claim under the Utah Uniform Trade Secrets Act.  *See* Docket No. 19.

[11]Pl.'s Mem. Opp. at 11 (Docket No. 9).

In *Hermansen v. Tasulis*, the Supreme Court of Utah expressly adopted Colorado's formulation of the economic loss rule: "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."[12]  However, a tort claim based on a duty of care that is independent of a party's contractual duties "does not fall within the scope of the rule."[13]

Courts have differed in their treatment of statutory claims under the economic loss rule. Some courts apply the economic loss rule without distinction between statutory claims and common law torts; others hold that the economic loss rule has no application whatsoever to statutory causes of action.[14]  Whether Utah's economic loss rule applies to statutory causes of action has not been decided by Utah courts.  Therefore, the Court must predict how that Supreme Court of Utah would rule on this issue.[15]

In this predictive pursuit, the Court finds the Tenth Circuit case of *Boehme v. United States Postal Service*[16]—a case interpreting Colorado's economic loss rule, the formulation of

---

[12]*Hermansen v. Tasulis*, 448 P.3d 235, 240 (Utah 2002) (quoting *Grynberg v. Agric. Tech, Inc.*, 10 P.3d 1267, 1269 (Colo. 2000)) (emphasis removed).

[13]*Id.* (quoting *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256, 1263 (Colo. 2000)) (internal quotation marks omitted).

[14]*Compare*, *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3rd Cir. 2002) (applying economic loss rule to bar claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law), *with Comptech Int'l, Inc. v. Milam Commerce Park, Ltd.*, 753 So. 2d 1219, 1223 (Fla. 2000) (holding that the "economic loss rule does not bar statutory causes of action").

[15]*Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002) ("When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule.").

[16]343 F.3d 1260 (10th Cir. 2003).   Notably, the *Boehme* court relied on *Town of Alma*, the same case relied upon by the Supreme Court of Utah in *Hermansen*.

which was expressly adopted by the Supreme Court of Utah in framing Utah's economic loss

rule—to be persuasive.  In *Boehme*, the plaintiff landlord brought an action for unlawful detainer

under Colorado law against the United States Postal Service (USPS) after the USPS allegedly

failed to pay property taxes as required by their lease agreement.[17]  In an attempt to avoid

application of the exhaustion requirements of the Federal Tort Claims Act (FTCA), the landlord

argued that application of the FTCA to the unlawful detainer statute would violate Colorado's

economic loss rule.[18]  Relying heavily on a landlord's ability under Colorado law to

simultaneously pursue both contractual remedies and statutory unlawful detainer remedies, the

court concluded that by enacting the unlawful detainer statute, the Colorado legislature intended

to create a statutory remedy that was independent of a breach of contract claim, even where the

statutory remedy is based entirely on the breach of a contractual duty.[19]  Accordingly, the court

found that the economic loss rule had no application to a statutory action for unlawful detainer.[20]

 Applying the rationale set forth in the *Boehme* case, the Court finds that Plaintiff's trade

secret misappropriation cause of action is not barred by the economic loss rule—even though the

duty comprising the basis of Plaintiff's statutory claim arose only upon execution of the

Agreement—because the duty to refrain from unauthorized use or disclosure of Plaintiff's trade

secrets was independently imposed by the Utah Uniform Trade Secrets Act (the "Act").  Similar

---

[17]*Id.* at 1261-62.

[18]*Id.* at 1265.  Presumably the argument was that construing an unlawful detainer action as a tort, and thereby subjecting it to the FTCA, would mean that unlawful detainer actions inherently violate the economic loss rule.

[19]*Id.* at 1266.

[20]*Id.*

to the unlawful detainer statute in *Boehme*, the Act contemplates bringing a statutory action for trade secret misappropriation based on circumstances that also constitute breach of a contractual duty of non-disclosure or non-use. The Act includes the following in its definition of misappropriation:

> (b) disclosure or use of a trade secret of another without express or implied consent by a person who:
>
> . . . .
>
> (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
>
> . . . .
>
> (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.[21]

This language has been interpreted as giving rise to a statutory duty to refrain from "disclosure or use of a trade secret of another"[22] when parties enter into an agreement of non-disclosure or non-use.[23] In *Penalty Kick Management Ltd. v. Coca Cola Co.*, the plaintiff developed a "beverage label marketing and production process," which the plaintiff desired to license to the defendant.[24] Prior to entering negotiations concerning a potential licensing agreement, the parties executed a "Non-Disclosure Agreement in which each agreed not to disclose to any third party any confidential information shared during [the] discussions."[25] After

---

[21] Utah Code Ann. § 13-24-2(2)(b)(ii)(B).

[22] *Id.* at § 13-24-2(2)(b)(ii).

[23] *Penalty Kick Mgmt. LTD. v. Coca-Cola Co.*, 318 F.3d 1284, 1292 (11th Cir. 2003) ("In this case, the surrounding circumstances, namely the *Non-Disclosure Agreement*, clearly gave rise to a duty on the part of Coca-Cola to maintain the secrecy of any Magic Windows trade secrets.") (interpreting the Georgia Trade Secrets Act of 1990).

[24] *Id.* at 1286.

[25] *Id.* at 1287.

the defendant refused to enter into a licencing agreement, and upon learning that the defendant

also pursued a similar technology with another company, the plaintiff brought suit for breach of

contract, trade secret misappropriation, and other theories of recovery.[26]  Applying Georgia's

version of the Uniform Trade Secrets Act, which is nearly identical to the Utah Act,[27] the court

found that the defendant acquired the plaintiff's trade secret "under circumstances giving rise to a

duty to maintain its secrecy or limit its use" as evidenced by the Non-Disclosure Agreement.[28]

Although ultimately finding that the defendant did not use or disclose the plaintiff's trade secret,

the court made clear that the defendant had a statutory duty "to maintain the secrecy" of

plaintiff's trade secret by virtue of the Non-Disclosure Agreement and that if the defendant

would have used or disclosed the plaintiff's trade secret, it would have been liable for

misappropriation under the statute.[29]

    Thus, a statutory duty to refrain from misappropriating the trade secrets of another may

arise upon the creation of a contractual duty of non-disclosure or non-use.  In fact, Utah courts

expressly allow a plaintiff to maintain an action for trade secret misappropriation by showing that

a trade secret was acquired by the defendant "under an express or implied agreement limiting

---

[26]*Id.* at 1286-89.

[27]Although the *Penalty Kick Management* court was interpreting Georgia's version of the Uniform Trade Secrets Act, the language found in the Utah Act is nearly identical to the language in the Georgia Trade Secrets Act.  *See* Utah Code Ann. § 13-24-2(b)(ii)(B); Ga. Code Ann. § 10-1-761(2)(B)(ii)(II).  In fact, the Utah Act specifies that it is to be "applied and construed to effectuate its purpose to make uniform the law with respect to the subject of the [Act] among states enacting it," Utah Code Ann. § 13-24-9, thus inviting the Court "to rely on interpretations of other states' versions of the [Uniform Trade Secrets Act]."  *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1217 n.3 (10th Cir. 2000).

[28]*Penalty Kick Mgmt.*, 318 F.3d at 1292 (citing Ga. Code Ann. § 10-1-761(2)(B)).

[29]*Id.* at 1292-93.

disclosure of the secret" and either used or disclosed by the defendant without the consent of the trade secret's owner.[30]   Additionally, while the Act "displaces conflicting tort, restitutionary, and other law of [Utah] providing civil remedies for misappropriation of a trade secret," it "does not affect . . . contractual remedies, whether or not based upon misappropriation of a trade secret."[31] Thus, similar to the unlawful detainer statute in *Boehme*, under the Act a plaintiff may simultaneously (or independently) pursue a statutory trade secret misappropriation claim and a breach of contract claim.

In sum, the Act creates an independent legal duty—enforceable under the provisions of the Act itself—to refrain from "disclosure or use of a trade secret of another"[32] when that trade secret is acquired, among other ways, pursuant to a contract of non-disclosure or non-use.[33] Accordingly, the economic loss rule does not apply to Plaintiff's statutory trade secret misappropriation claim, even though the statutory duty under the Act became operative only by virtue of the Agreement's execution.  As the Agreement does not contain any provision that would otherwise preclude Plaintiff from pursuing the remedies available under the Act, the Court will deny Defendant's Motion to Dismiss.

Although Plaintiff argues that all statutory causes of action are beyond the reach of the economic loss rule, the Court need not go that far to decide the matter before it.  Rather, the

---

[30]*See Water & Energy Sys. Tech. v. Keil*, 974 P.2d 821, 822 (Utah 1999).

[31]Utah Code Ann. § 13-24-8(2)(a).

[32]*Id.* at § 13-24-2(2)(b).

[33]*See All West Pet Supply v. Hill's Pet Prods. Div., Colgate-Palmolive Co.*, 847 F. Supp. 858, 861 n.2 (D. Kan. 1994) (stating that "*contractual duty* of confidentiality" and "*statutory duty* under [Kansas] Uniform Trade Secrets Act not to use or disclose information that falls within the definition of a trade secret" are independent of each other).

Court acknowledges that there may be instances where Utah's economic loss rule will bar statutory claims. However, in this case, the Act clearly provides a cause of action for trade secret misappropriation based on the breach of an independent statutory duty.

### IV.  CONCLUSION

For the reasons set forth above, it is hereby

ORDERED that Defendant's Motion to Dismiss [Docket No. 3] is DENIED.

DATED February 25, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge

10